on behalf of Petitioner Appellant Armando Ybarra, and I would like to reserve two minutes at the end of my argument. In 1998, Armando Ybarra waived his right to a jury trial and pleaded guilty in exchange for three concessions by the prosecutor. First, that his guilty plea would be to charges that were not strike offenses under the current version of California's three strikes law in 1998. Second, that he would be sentenced to three years on each of the plea charges to run concurrently with each other and also concurrently with a separate probation violation. And third, and most importantly for purposes of this case, an additional written statement that appeared in Section 9 of his plea agreement. It was in the form of three and this was designated as a term to which the prosecutor had agreed and as the reason for Mr. Ybarra's plea. How is that different from the first point that you made? It's different, Your Honor, in the following sense. First, California law is deemed to incorporate changes in the law that occur subsequent to the plea agreement. So simply agreeing to two charges that were not strikes at that time simply meant that his plea was to charges that were not strikes at that time. But he also bargained for an additional contractual provision. That's not what he testified to. He was asked whether his attorney had anticipated that there might be a change in the law and he answered that his attorney was not a fortune teller. Your Honor, I think that's completely irrelevant because the plea agreement, as this Court stated in Davis v. Woodford, was not purporting to freeze the law as it existed in 1998. It was saying he was receiving charges that were not then strikes and he was getting a promise as a matter of contract that existed separate and apart from whether the law would change. If that's the case, you know, it doesn't take very much to write down three words, not a strike. It wouldn't have taken very much to have added another four or five words that said not a strike for any purpose now or in the future. That would have been a very good idea, Your Honor. However, this Court has said repeatedly that the state is held responsible for ambiguities in plea agreements if indeed this is an ambiguous plea agreement. United States v. De La Fuente, which is cited in the party's brief, says that the prosecution is ordinarily responsible for lack of clarity in plea agreements. In addition... So I think the Court, one of the Court's thoughts was that not a strike was singular and that it was probably focusing on the 487, the Calpheon Code 487. I mean, you agree that not a strike is singular, correct? I agree that not a strike is in the singular sense, but I'd like to back up for just a second, Your Honor. The state court made that construction of the agreement, but first of all, that's not entitled to any deference because it was conducted pursuant to a completely inapposite legal analysis. This is not a factual finding that's entitled to any deference here. This is a construction of a plea agreement. But that is, I mean, it is in the singular. It is in the singular. So that's unambiguous. That's not plural. Well, it is in the singular, but I think what's ambiguous is does it refer to one of the plea charges or does it refer to the case as a whole? And if you look at the Section 9 of the plea agreement, it actually doesn't, it's certainly not clear that not a strike pertains to any of the other terms that are written in that section because what's three years 487-2 and three years 136.1 midterm. It does, it's not clearly, it's not clearly the case that not a strike refers to a sentence. In fact, California law in 1998, Penal Code 1170.12c said that the determination of whether an offense is a strike or not has nothing to do with the sentence, excuse me, the determination of whether a charge is a strike or not a So it's simply not the case that you look at not a strike and say, ah, that's singular. It must apply to this term written over on the left, three years 487-2. That's not actually a sensical construction or at the very least, it's not a clearly correct construction of that. So are you saying that if there's two offenses, I thought each offense was considered separately as to whether it was a strike or not, but you're saying that's not the case? I'm saying that it's at least possible to read this Section 9 as having a heading which says, not a strike. And that, those three words, not a strike, are not modifying anything else in that section. It's simply an independent stand-alone promise by the prosecutor. The prosecutor has agreed to not a strike. That may be ambiguous, but as Reece explained, if it's ambiguous, then you must... Why isn't it just descriptive? Excuse me? Why isn't it just descriptive? Well, because that would render it surplusage and it would also ignore several other terms and conventions that are used in the agreement. If it's descriptive, it serves no independent purpose and it merely modifies something that was already true. Section 487 was already not a strike. There's no reason to include not a strike unless it's providing something additional. This is not simply a minor concept in California law. ACL Technologies versus Northbrook Property and Casualty Company is very clear that there is a rule against redundancy. Defining terms and contracts to render them redundant is not in the rules of contract interpretation as laid down by our Supreme Court. And it said it actually again in the same decision construing the word sudden in a comprehensive general liability contract. If in the context of the pollution exclusion, sudden meant merely unexpected, it would have no independent meaning as the idea would also be subsumed within the word accidental. The word would be rendered to surplusage. In California, however, even insurance contracts are construed to avoid rendering terms surplusage. So that's an important principle. So do we have to construe it to avoid a redundancy? Is it possible that somebody could include a redundancy? No, Your Honor, but if there are two plausible interpretations, one of which would render a word surplusage, then California law dictates that you must adopt the other one. And here, there are at least two ways to interpret not a strike. One as a heading that's not written on the same line as either one of the other terms in that section that doesn't clearly apply to a sentence. And as I explained in my brief, if you look at the agreement as a whole... You'd like to interpret it as a heading? I'd like to interpret it as a heading. That still doesn't explain why it's not descriptive. Because there have been some back and forth here. He was very anxious not to have these count as a strike. But he testifies later on that his attorney wasn't talking about the future. That he was concerned that this not be counted as a strike against him at that point. Well, Your Honor, I don't think that actually the testimony was that he was not talking about the future. I think the testimony was that his attorney never represented to him that this would never become a strike or that the law wouldn't change. Well, of course, it didn't matter whether the law changed. It was a contract between him and the San Bernardino District Attorney's Office. He said, I addressed my attorney. I specifically asked him to negotiate an agreement that did not carry a strike. But nobody was thinking of... I mean, what the court looked into was that nobody thought that 136.1 was a strike at the time. But the other charges that were leveled against him could be strikes. And so he negotiated down so that the prosecutor dropped all charges except for one charge of grand theft, I guess, to avoid a strike. And so taken in context, the court's interpretation certainly seems reasonable. Why don't we, under Adamson, just defer to the reasonable interpretation of the state court on a matter of state contract law? Your Honor, under Buckley v. Terhune and Brown v. Poole and Davis v. Woodford, the state court's interpretation is not entitled to any deference because... Well, we couldn't overrule the Supreme Court, right? That's what the Supreme Court said, was you can't second-guess the state's interpretation of contract law. Your Honor, are you referring to Ricketts v. Adamson? Mm-hmm. Your Honor, this court in Marshall v. Rogers, the Supreme Court held that this court looks to its own prior precedents to determine if it has held that a particular principle is clearly established. This court has held on Bonk in Buckley v. Terhune that it is clearly established law, that state courts must follow state court law in interpreting, contract interpretation law. And didn't the state court here follow state contract law? I didn't see why it didn't. It did not, Your Honor. It didn't say the words contract law and contract principles. It clearly said it's not ambiguous. Your Honor, state contract law requires that to consider the text and the words used by the parties. And didn't the court do that here? It did not do so initially or as the main part of its analysis, Your Honor. It subsumed its analysis in determining Ibarra's intent. I'd like to refer you to the Court of Appeals decision on ER 18. It said, what was it actually determining? And it explained that very clearly. It said, several pieces of evidence in the record clearly support the trial court's ruling that the continuation of the offense as a non-strike in perpetuity was not a term of the 2009 plea agreement. This is because the evidence shows that this was not what induced Ibarra into entering the 1998 plea agreement. That is its overall analysis, what induced Ibarra as a subjective matter to enter the agreement. In Buckley v. Terhune, this court held that what induced the defendant or what the defendant well knew is not relevant. That's not the correct inquiry under state law. And in fact, I'd like to refer, Your Honors, to the state court's opinion in Buckley, which actually also mentioned the language of the plea agreement. The en banc panel's decision does not actually include one of the sentences that appeared in the state court opinion in Buckley. The state court opinion in Buckley said, specifically in the felony disposition statement that was the written contract, the maximum term of 15 years to life is expressly set forth. So just as in this case there was a mention of the writing, but it was not done in the course of conducting a proper state law analysis. I guess we must have overlooked that language, huh? Well, I don't know, Your Honor. It's possible, but there's an ellipsis in the Buckley en banc opinion. And when you look at the district court opinion. Excuse me. I hate to interrupt. Your time is up, but I want to ask a question. Certainly, Your Honor. Why should we conclude that Mr. Ibarra was induced to plead guilty specifically because dissuading a witness was not a strike in 1998? Why should we conclude that, Your Honor? Yes. Well, because under Santabello, whether or not someone was induced to plead guilty is actually an objective analysis, and you must look at whether the relevant term was any part of the contract. So let's suppose that Mr. Ibarra's main concern here, or the main concern of the parties, was that he avoid a strike at that time. That's possible. But Santabello says you don't simply look at what was the main concern. You have to look at whether there was any additional concern that played a part in the guilty plea. So, for example, in Santabello, he was mostly concerned with a less serious criminal charge, but he also had a promise that the prosecutor would not recommend a particular sentence. So Mr. Ibarra here, perhaps his main concern was to avoid a strike at the time, but he also bargained for a written statement. That was another part of the consideration for which he bargained and which he did refute. Thank you. Counsel, we hope to consume your time. I will allow you a minute for rebuttal. Thank you very much, Your Honor. Moving to the State, Mr. Murphy. Good morning, Your Honors. May it please the Court. Mike Murphy, Deputy Attorney General, on behalf of Respondent and Pelley. The State Court did reasonably interpret the plea agreement in this case, and they did apply California contract law principles. But, Counsel, what do you do with the surpluses argument? And how does it make sense for not a strike to modify the three-year sentence associated with Grand Theft Person? Well, Your Honor, I believe that needs to be understood in the context of the negotiations and the plea colloquy that was going on. I agree. We should look to the entire procedure. Right. And I think when you do that, it becomes clear from the record that the focus of the negotiations was to enable Mr. Ibarra to plead guilty to an offense in lieu of the robbery offense, which was a strike, to an offense that wasn't a strike offense at that time. Hadn't he turned down an offer of plea agreement prior to this agreement that did not provide the not a strike? That's correct, Your Honor. There was an offer for three years concurrently. Which he turned down. Just like there was now. The only difference was that included a requirement that he plead guilty to the robbery offense, which was a strike. Yes. He turned that one down. And then subsequently there was the forthcoming offer for the grand theft charge as a lesser included offense of the robbery, and everything else remained the same, and that's the deal he accepted, which inherently suggests that the determining factor there was now instead of pleading to the robbery, a strike offense, he's pleading to a grand theft charge, a non-strike offense. The record doesn't disclose any negotiation regarding the 136, the dissuading witness charge, and whether, you know, either the nature of that offense at that time or in the future. Of course, everyone would have understood it was a non-strike offense at the time. But what do we do with his testimony before the state court that his whole purpose in entering the plea agreement was to afford a strike? Well, and I don't think that's problematic, Your Honor. There's a distinction between wanting to plead guilty today to non-strike offenses versus bargaining for an agreement with the state that if the law changes in the future to the three strikes law, I won't be subject to any potential damaging consequences because of that change. So, I mean, everyone who pleads, you know, negotiates to a non-strike offense, which is always an important factor in a defendant's mind, it's not appropriate to attach to that a promise that nothing will ever change under the law and that you may not be affected by that. In fact, the California Supreme Court has clarified that the parties need to contemplate and are deemed to understand that changes might affect the consequences of their plea. And I think particularly telling, too, to your original question, as far as the singular language, Your Honor, in the non-strike and what it modifies, the California Court of Appeal pointed out that the defense counsel at the plea hearing stated, and I quote, Your Honor, I discussed with counsel and the court and my client that the grand theft person is not a strike. End quote. The court then responded yes, and that is my understanding, that it is both counsel's and the court's understanding, and is that grand theft person is not a strike. Now, first of all, that is the exact language that we see in the plea agreement, not a strike. And this discussion between the court and counsel at the plea agreement, I think, you know, that was a signal to the client, who was very concerned about what he was pleading to. He didn't want to plead guilty to a strike. So his attorney brought up in open court and got assurances from the judge that yes, the grand theft charge, which was the change in everything, okay, you were charged with robbery, but we're going to allow you instead to plead guilty to the grand theft. This was an assurance that that is not a strike offense, and they put that assurance in the plea agreement, again, as an assurance. That's an express, it's not surplusage, it's an express statement of the party's understanding of the legal, you know, significance of the charges to which he pled guilty to in relation to the three strikes law, which was the defendant's main concern throughout the negotiations. Everyone knew it was not a strike. Well, I'm sure the lawyers and the judges well understood that, but, you know, defendants and laymen, they don't necessarily know the ins and outs, and they want an explicit statement that, yeah, this isn't a strike. You know, to just say, oh yeah, you got the 487, you're good, that doesn't necessarily satisfy some clients or, you know, laypeople. So I don't think the fact that the parties explicitly stated their understanding on the plea forms should somehow cut against them and say, well, it's just surplusage and we can't consider it in the context of why they said that. It exactly mirrors the code we have at the plea hearing, and I think, you know, it's a parenthetical, it's a clarification of everyone's understanding. You know, the two terms that were agreed to, I submit, are you can plead guilty to grand theft and the 136 charge, and we will agree to concurrent terms of three years for that, along with the probation violation case. Those were the operative terms that were negotiated, and the phrase not a strike is, again, an express statement of their understanding of the significance of that. Thank you. How do we know that the California Court of Appeal considered California contract principles in reaching its decision? Well, they looked to the language that is often looked to that's relevant in interpreting agreements. They, excuse me. What would that be? Yeah, well, and I'm not sure if I misspoke. Look to the language. They looked to the language and they looked to the circumstances. So the language, of course, is what we've been discussing here, and they do discuss the- Yeah. When they cite the circumstances, they quote that the plea rested in a significant degree on a promise or agreement so that it can be said to be part of the inducement or consideration. And it omits the citation, but the citation is to Santabello. Correct. And that's the one that we said in Buckley en banc that it's not the right citation. It's not the principles of Santabello. It has to be California contract principles. Well, Your Honor, I think Santabello, to be honest, is an overlaying principle that is applied here because ultimately the question is did the state violate a promise that it made to the defendant? And if so, that would be a violation of his due process rights under Santabello. And then we have, also I agree, in Buckley this court held en banc that under Ricketts v. Adamson, the state court is required to follow state contract principles. So I think both of those cases are operative here, Your Honor. And if you read Ricketts v. Adamson, what they do say there, it's the state's position, it's not that a defendant has a constitutional right to have a state court adhere to a particular methodology when interpreting a plea agreement. What Ricketts v. Adamson said is, you know, as long as the states end up with a reasonable interpretation, federal courts are not to second-guess that interpretation. All right, counsel, what do we make of the fact that the same prosecuting office that negotiated the 1998 plea did not charge the dissuading witness as a strife in 2004? Your Honor, I'm not sure what to make of that. I think it's only subject to speculation. That wasn't something that was addressed in the record in any of the courts until now, and I know it's the subject of a request for judicial notice. Well, let me tell you what bothers me about this case is the unfairness. If there's an ambiguity in the plea agreement, aren't we supposed to construe it in Mr. Arbaro's favor? Well, Your Honor, I believe we only do that if a reference to the circumstances doesn't otherwise clarify, you know, what was meant. Obviously, the purpose of interpretation is to establish or determine the intent of the parties in their agreement. And if the language alone can't do that, we look to the circumstances. And I'm looking to the circumstances. And our position here is that the circumstances, you know, do establish clearly what was meant by that language. Like I said, it reflects precisely what counsel stated to the court at the time of the plea hearing. It was an assurance to the defendant, you know, everyone's understanding is this is not a strike. And that made sense to do only that in that case because that was the negotiating point with the defendant. That was the sticking point. And, again, it's quite a different thing, Your Honors, to say that negotiating that I'm not pleading guilty to a strike offense is the same as an agreement that future changes to a law aren't going to affect me. And I'd like to point out one distinguishing factor with the case of Davis v. Woodward, which was recited by counsel. In that case, this court did find that there was an agreement that bound the prosecution in the future. But the language there was much different than it is here. What was important to this court in that case was a statement by the prosecutor to the following. Quote, for all purposes, it is the people's position that this would be won five years prior on his record as a violent felony. So in that case, you had an express statement by the prosecutor. And in that case, the defendant had pleaded guilty to eight robberies. And then you have this express statement that it's the people's position, for all purposes, this would be one violent felony on his record. So in that case, it's understandable that that would be interpreted as an agreement that when the three strikes law came out in the future and they wanted to charge all eight robberies as strikes, they said, well, no, you said this would only constitute one strike on his record for all purposes. We don't have such an expansive statement here. What we have is really a sentence fragment, not a strike. And when you look at the colloquy from the plea hearing, and frankly, if you look at the location on the plea form, it's up to the right appearing to modify, in our opinion, the language of three years on 487. And that's perfectly consistent with the negotiations and the statements by the court of counsel. Well, you mentioned we look to the context here. And what bothers me again is in 2004, the state didn't charge it as a strike, and it charged other offenses as strikes. So in terms of understanding the position of the state and the position of the defendant, it seems unfair to me. Well, I understand the concern, Your Honor. The state did then charge it as a strike again in 2008, of course, in this case. So we have perhaps inconsistent treatment of that prior, and I have no explanation for the reason if it was oversight, if it was some other reason that this was not settled in the record. I see my time is up unless there are any further questions. Okay. I'll allow you another minute. Thank you, Your Honor. I'd like to address some of the contentions that were made by counsel. First, that you look at the context to see whether the interpretation of the state court was reasonable. That simply ignores the correct process that the state court was required to conduct under its own law. California Civil Code sections 1638 and 1639 clearly state, as well as the California Supreme Court and Bank of the West, that the language of a contract is to govern its interpretation if the language is clear and explicit and does not involve an absurdity. When the contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, the writing alone, unless there's an ambiguity. The court did not do that here, did not look at the writing alone to determine whether there was an ambiguity and then move to extrinsic circumstance. It simply lumped it all together in a subjective interpretation of what Ibarra's intent was. That's not fair, Your Honor. In addition, I'd like to respond to counsel's contention that the fact that Ibarra was a layperson means that we should interpret this as surplusage because he should be deemed to have simply not understood what he was agreeing to and need an extra help to understand that this was not a strike. That is contrary to California law. We are not to look at Mr. Ibarra's status as a layperson to override the rule against surplusage. We are to look at his status as a layperson to interpret the agreement in his favor. What would an objective defendant in his circumstances had understood from the fact that there were three words in Section 9 saying not a strike that had no independent function in that contract unless they gave him some additional protection from what he already had when he pleaded guilty to 136.1 and 4887. So we must interpret it in his favor. What more could he have done? He asked for a written statement. That's what he asked his attorney to get for him, and that's what he got. And to the extent that's ambiguous, we need to construe that to protect him. As a matter of contract, not to say that the law can never change, but he had a contractual promise. Do I have any more time, Your Honor? You've actually consumed two minutes. Okay. Well, I thank Your Honor. Thank you very much. We thank both counsel for the argument. Ibarra is submitted. The next case is Argonaut Insurance Company v. Elite Home Medical and Respiratory, Inc.
judges: Nelson, Bybee, Ikuta